LUCY S. TURNER, executrix, & another *vs.* WILLIAM H.
WHITE & another, executors.

Plymouth. November 7, 1952. — December 3, 1952.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Contract,* Implied, For personal service. *Election. Will,* Acceptance of
benefit under will. *Evidence,* Of value.

Evidence that the manager of a large estate worked for its owner over a
period of thirty-six years in reliance upon the owner's oral promise,
unenforceable under the statute of frauds, to leave the estate to him
and his wife by will if they would stay with the owner as long as he
lived, which they agreed to do and did, but that the owner did not de-
vise the estate to them, warranted a verdict for the manager's execu-
trix in an action against the owner's estate to recover upon a quantum
meruit the value of the manager's services over that period. [553–
554]

Acceptance by an employee's executrix of a legacy given the employee by
his employer's will did not constitute an election precluding her from
enforcing a claim against the employer's estate for the value of serv-
ices rendered by the employee to the employer. [554]

At the trial of an action against the estate of a decedent for the value
of services rendered him by his employee in reliance upon the de-
cedent's oral promise to leave certain real estate to the employee by
will, evidence of the value of the property was admissible to show the
value of the employee's services. [555]

CONTRACT. Writ in the Superior Court dated April 21,
1950.

The action was tried before *O'Connell,* J.

*Eben G. Townes,* (*Edward H. Stevens* with him,) for the
defendants.

*Anthony Brayton,* for the plaintiffs.

COUNIHAN, J. This is an action of contract against the
executors of the will of William S. Eaton, late of Lakeville,
by Lucy S. Turner, executrix of the will of her husband
Joseph C. Turner, also late of Lakeville, and by Lucy S.
Turner, individually. In it the plaintiffs seek to recover
for personal services rendered Eaton from February, 1913,
to March 15, 1949, the date of the death of Eaton. The

declaration was in five counts. The first three counts sought damages for breach of an oral contract, whereby Eaton promised to leave certain property to the Turners upon his death. Count 4 sought the fair value of services performed and labor furnished by Joseph C. Turner to Eaton from February, 1913, to March 15, 1949. In count 5 Lucy S. Turner sought the fair value of her services to Eaton during the same period.

The defendants in their answer so far as here material set up a general denial; a denial of the alleged contract with the Turners; the statute of frauds, G. L. (Ter. Ed.) c. 259, § 5, which requires that an agreement to make a will be in writing; and an election of the plaintiffs to accept legacies under the will of Eaton.

At the conclusion of the trial the judge directed verdicts for the defendants on counts 1, 2, 3, and 5. He denied the motion of the defendants for a directed verdict on count 4. The jury returned a verdict for the plaintiff executrix in a substantial amount on count 4, which was recorded under leave reserved. The action is here upon exceptions of the defendants to the denial of their motion for a directed verdict on count 4; to the denial of their motion to set aside the verdict of the jury on count 4 and to enter a verdict for the defendants under leave reserved; to the denial of their motion for a new trial; to the refusal of the judge to give certain rulings requested by the defendants; to portions of the judge's charge; and to certain rulings of the judge relating to the admission of evidence. The exceptions to the denial of the motion for a new trial and to portions of the judge's charge were not argued by the defendants and are treated as waived.

The plaintiffs also filed a bill of exceptions alleging errors of the judge. At the argument before us the plaintiffs orally stipulated that they waived all their exceptions if the exceptions of the defendants were not sustained. Because of what hereafter appears the exceptions of the defendants must be overruled. We have given consideration therefore only to those exceptions.

In considering the evidence in its aspects most favorable
to the plaintiffs the jury could have reasonably found the
following facts.    Joseph and Lucy Turner were married
in 1901.    In 1908 Joseph went to work for Eaton on the
latter's 500 acre property called Betty's Neck in Lakeville.
It was then undeveloped.    Joseph supervised and managed
the development and operation of the property until there
were 100 acres of cranberry bog on it, together with an
apple orchard, 22 buildings including a sawmill, a big truck
garage, a barn, and a large dwelling house part of which
was occupied by Eaton and part by the Turners.    This
house was built in 1912 under the direction of Turner who
was given full discretion by Eaton in the building of it.
In February, 1913, Eaton spent an evening with the Turners
in their apartment.    As he was about to leave Eaton said
to them, "There is no need for you and Lucy to go on in
the dark.    If I should die tonight, everything is fixed so
that this property will go to you and Lucy, if you will
stay with me as long as I live."    Both "of us said we would
do our very best to make him glad that he had told us of
this."    Joseph said, "It was so good of you to tell us this
so far in advance to make us comfortable and feel secure
about our future."    Lucy said, "Mr. Eaton I hope it will
be a good many years, a great many years before this
change takes place."    Eaton replied, "I will dodge the
automobiles the best I can."    Eaton was then 59 years old
and unmarried.    On another occasion shortly thereafter
Eaton told Joseph that he was leaving the place to him
and Lucy if they would stay with him as long as he lived.
On June 16, 1913, Joseph sold his interest in another cran-
berry bog in Thomaston.    He wanted to devote all of his
time to Eaton's interests.    From 1913 to the death of Eaton
in 1949 Joseph had complete charge of operating the bog,
employing at one time 200 men.    He handled the payrolls,
kept the books, harvested and sold the cranberries, operated
the sawmill, and manufactured and sold cranberry boxes
and barrels.    He spent most of his time at Betty's Neck,
taking but one vacation in 36 years.    During most of this

time Eaton was travelling on his yacht or living in Boston. He frequently spoke highly of the loyalty and devotion of the Turners to his interests. Joseph Turner received a regular salary from Eaton beginning with $1,800 a year and increasing until it reached $4,200 which he got during his last two years. He occupied his apartment rent free and he paid nothing for heat, light or telephone service. During the period he worked for Eaton he refused offers of other positions which would have paid more. In continuing to work for Eaton he relied upon the promise of Eaton to leave Betty's Neck to his wife and him. Both Eaton and Turner told others of the promise.

Joseph died on May 7, 1949, and the executors of Eaton paid Lucy as executrix of Joseph a legacy of $25,000 given him in Eaton's will, and paid her $5,000, the amount of the legacy to her. Eaton did not devise Betty's Neck to them.

At the conclusion of the trial the defendants filed requests for rulings of which Nos. 1, 2, 3, 4, 5, and 9 were refused, subject to the exceptions of the defendants. They were as follows: "1. If the jury find that the plaintiff, individually and in her capacity as executrix, took any beneficial interest under a will, she shall be held thereby to confirm and ratify every other part of the will, or in other words, a person shall not take any beneficial interest under a will, and at the same time set up any right or claim of her own even if otherwise legal and well founded, which shall defeat, or any way prevent the full effect and operation of every part of the will. 2. There is an obligation on him who takes a benefit under a will to give full effect to that instrument under which she takes a benefit. 3. The plaintiff cannot take both a performance of the contract and the provision made for her and her testate in the will. 4. If the jury find that the plaintiff both individually and in her capacity as executrix, elected to take legacies under the will, then she cannot recover under the alleged oral contract. 5. If the jury find that the decedent, William Storer Eaton, said, in substance, to the decèdent, Joseph C. Turner,

'there is no need for you and Lucy to go on in the dark; if I should die tonight it is fixed for you to have the property, if you will stay with me the rest of my life,' there would be no contract between the parties as there would be a failure of consideration. 9. The plaintiff is not entitled to recover, in her capacity as executrix, if the jury find that her testate was told by the decedent, Eaton, in substance, 'if I should die it is fixed for you to have the property, if you will stay with me the rest of my life.'"

The plaintiffs tried the case upon the theory that if they were barred from recovering upon counts 1, 2, and 3 by reason of G. L. (Ter. Ed.) c. 259, § 5, they were entitled to rely upon and recover on counts 4 and 5 which were for the fair value of the services of Joseph and Lucy. In this they were correct. The promise of Eaton in February, 1913, that the property would go to Joseph and Lucy on his death if they stayed with him as long as he lived was accepted by them who by inference at least agreed to stay with him and did stay with him in reliance upon his promise. Thus a completed contract was entered into between Eaton and the Turners, and when it could not be completely carried out because of G. L. (Ter. Ed.) c. 259, § 5, either or both of them were entitled to recover for their services on a quantum meruit basis.

In *Hollister* v. *Old Colony Trust Co.* 328 Mass. 225, at page 228, we have recently stated, "There was ample evidence to warrant a finding that the testatrix requested the plaintiff to perform services and promised to compensate her for them by a provision in her will, and that relying on this promise the plaintiff performed the services requested. Such a promise, being oral, would not be enforceable under the statute of frauds (G. L. [Ter. Ed.] c. 259, § 5), but the plaintiff, nevertheless, could recover under quantum meruit for the fair value of her services. . . . The promise relied on here went beyond a mere expression of an intention that never ripened into a contract and distinguishes the present case from *Hurl* v. *Merriam*, 252 Mass. 411, cited by the defendant" (and cited also by the

defendants in the present case). This language may be applied with equal force to the circumstances of the instant case and seems to us decisive.

It was said with even greater force in *Downey* v. *Union Trust Co.* 312 Mass. 405, at page 411, "But one who has rendered valuable services pursuant to an oral agreement, which cannot be enforced on account of the statute of frauds, may recover on a count for quantum meruit, and this remedy is allowed not as a means of avoiding indirectly the statute but in order to prevent the statute from being employed as an instrument of fraud by compelling the defendant to pay for what he has received by virtue of the express contract."

The motions for a directed verdict and for the entry of a verdict for the defendants on count 4 were rightly denied.

There was no error in the failure of the judge to charge the jury as requested by the defendants. Requests 1, 2, 3, and 4 had to do with the acceptance of the legacies to Joseph and Lucy under the will of Eaton. The defendants argue that by electing to accept these legacies the plaintiffs were precluded from proceeding against the estate in this action. They rely upon the principle established by *Hyde* v. *Baldwin*, 17 Pick. 303, 308, to the effect that a person "shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat, or in any way prevent the full effect and operation of every part of the will." We have affirmed this principle in *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 628–629. But that principle has no application here. The answer to the defendants' contention in this respect may be found in *Hollister* v. *Old Colony Trust Co.* 328 Mass. 225, 229, "The acceptance of the legacy by the plaintiff was not necessarily inconsistent with her claim for services against the estate. It cannot be said that the claim operated to defeat the will, although it would, if successful, diminish the amount received by the residuary legatees." The reference to a provision in the will for the payment of "just debts" in the

*Hollister* case has little significance and does not preclude the application of that case to the instant one. *Collis* v. *Walker,* 272 Mass. 46, 48.

What we have said with reference to the denial of the motions for a directed verdict and for the entry of a verdict on count 4 justifies the refusal of the judge to give requests 5 and 9.

There is no merit in the exception of the defendants to the admission of expert testimony as to the value of Betty's Neck. As evidence of the fair value of their services the plaintiffs were entitled to put in this testimony which they assert was the evaluation Eaton himself put upon their services in the promise he made to them. "The plaintiff is not suing for damages for a breach of the oral contract, and the value of the annuity is not the measure of damages. . . . But the value of the annuity which the testator promised to give as the consideration for the services could be shown in evidence as an admission of what the testator considered the services worth." *Downey* v. *Union Trust Co.* 312 Mass. 405, 413–414.

We have carefully considered all of the other exceptions argued by the defendants and find no merit in any of them.

The exceptions of the defendants are overruled. In accordance with the oral stipulation of the plaintiffs at the argument their exceptions, having been waived, are dismissed.

*So ordered.*