ALICE C. MASON, administratrix, *vs.* GEORGE J. BLACK.

Worcester. September 26, 1960. — November 8, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Contract,* Implied, For personal services. *Evidence,* Of value; Opinion: expert.

Upon findings by a judge of probate that over a period of years before an aged man's death his niece performed services in caring for him for which she, to his knowledge, expected to be compensated, although the amount of the compensation was never fixed by them, justified an allowance to her of the fair value of such services as a charge against his estate in schedule B of her account as administratrix of the estate. [349]

The fair value of services in caring for an aged person could be found without the aid of expert testimony. [349]

PETITION for allowance of an account filed in the Probate Court for the county of Worcester.

The case was heard by *Wahlstrom, J.*

*J. Fleet Cowden,* for the respondent.

*George N. Hurd, Jr.,* for the petitioner.

WILLIAMS, J. This is an appeal from a decree of the Probate Court allowing the first account of Alice C. Mason, administratrix of the estate of Ralph W. Black, late of Fitchburg, who died on April 27, 1958. The account is for the period of May 29, 1958, to May 28, 1959. The administratrix is a niece of the decedent and the appellant is a nephew. They are the next of kin and the only heirs at law of the decedent. The evidence is not reported and the facts are to be found in the judge's amended report of material facts. *Vergnani* v. *Vergnani,* 321 Mass. 699, 702. *Tenczar* v. *Tenczar,* 332 Mass. 105, 106.

According to schedule A of the account, the value of the estate is $33,600.79 and the items in dispute are item 20 in schedule B whereby the administratrix has credited herself

with the payment of $4,200 on account of nursing services and care, and item 27 in which the accountant has stated an unpaid balance due her for such services and care amounting to $21,800. The judge found that the decedent had lived at the home of the administratrix for about eighteen years, and died at the age of ninety-five. He had been ill and under her care for the last ten years of his life. During this time he had suffered from a number of diseases and physical ailments commonly accompanying old age. He often required the attention of a physician and at different times had been hospitalized for short periods. In 1941 he entered into a "loose" agreement with his niece as to what he should pay for board and room and later in 1948 agreed to pay her $21 a week but "none of these agreements . . . had anything to do with the services rendered by the niece for the benefit of her uncle."

It is unnecessary to recite the details of the somewhat lengthy findings of the judge as to the services rendered by the niece. He found that she "acted as nurse and companion . . . for practically twenty-four hours a day, each day over a period of ten years, with the exception of the time the uncle was in the hospital or rest home and that even on these occasions the niece spent a great deal of time with him giving him care." He was "totally bedridden" for about thirty days during this period and she "practically exhausted herself . . . caring for him." "[T]hey had never come to a definite agreement as to what should be paid to the niece, nevertheless, the uncle knew he was indebted to her; he knew she expected to be paid and he knew, or ought to have known, that he owed her a substantial sum of money for all the untiring services she had rendered in his behalf. . . . [S]he was not rendering this service because she was related to the uncle, nor because of any love or affection she might have for him, but because she expected to be compensated and believed that the uncle knew that she expected to be compensated. . . . [T]he uncle had led her to believe that he would make a will giving her substantially all of his estate but he died before the will

was drafted. . . . [T]he course of dealing between the uncle and the niece was such that even though there was no express contract in regard to the services rendered or in regard to the making of a will, yet the niece had every right to expect to be paid and the uncle knew, or should have known, that she had this expectation.''

The judge found that the fair value of the niece's services was $40 a week and that over a period of ten years $20,800 was the total amount due her. As she has paid herself $4,200, $16,600 is now due. Noting that this sum of $16,600 is reserved and included in schedule C of the account which shows a total of personal property held by the accountant amounting to $27,192, the judge entered a decree allowing the account as amended to show item 20 in schedule B as $20,800 thereby changing the total of schedule B from $6,408.79 to $23,008.79 and reducing the balance in schedule C to $10,592.

There was no error in the decree. The findings of the judge are sufficient to warrant the payment of the reasonable value of the services rendered. *McKenna* v. *Twombly,* 206 Mass. 62. *Butler* v. *Butler,* 225 Mass. 22, 28. *French* v. *Bray,* 263 Mass. 121, 123. *Tower* v. *Jenney,* 279 Mass. 208. *Therrien* v. *LeBlanc,* 282 Mass. 328. *Macomber* v. *King,* 288 Mass. 381. Restatement: Contracts, § 72. In view of the findings there is no room for any presumption that the services were gratuitous. See *Tower* v. *Jenney, supra,* p. 211; *Sykes* v. *Smith,* 333 Mass. 560, 564–565. The services were such that their value could be found by the judge without the aid of expert testimony. We cannot say that the value found by the judge was excessive.

*Decree affirmed.*