BERNYCE GREEN vs. RICHARD J. RICHMOND, executor.

Suffolk.   April 11, 1975. — November 10, 1975.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

Contract, Implied, For personal services, Validity.  Public Policy.
Law or Fact.   Evidence, Of value, Relevancy and materiality.
Damages, For breach of contract.

At the trial of an action in quantum meruit by a woman against the
executor of the will of a bachelor with whom the plaintiff lived in
the eight-year period prior to his death to recover for services
rendered in reliance on the decedent's oral agreement that if the
plaintiff would "stay" with him he would bequeath his entire estate
to her, where there was evidence of many instances of sexual inter-
course but evidence as to whether intercourse was a part of the
agreement or a necessary part of its performance was conflicting,
there was no error in denial of the defendant's motion for a di-
rected verdict; the jury were warranted in finding from the totality
of the evidence that intercourse was not a part of the agreement
and was no more than an incidental part of the plaintiff's perform-
ance, which included many services of a social, domestic, and
business nature the fair value of which was for the jury's considera-
tion.  [49-55]
At the trial of an action against the estate of a decedent for the value
of services rendered him in the eight-year period prior to his death
in reliance on his oral promise that if the plaintiff would "stay"
with him he would bequeath his entire estate to her, a promise re-
affirmed by the decedent just three months before his death, the
value of the decedent's estate was admissible in evidence [55-58];
however, in the circumstances it was error requiring a new trial
limited to the issue of damages, on which the jury had returned a
verdict for the plaintiff in the amount of $1,350,000, for the judge
to admit in evidence the probate inventory of the decedent's estate,
which showed merely an approximate asset value of $7,232,000,
without a preliminary inquiry as to the reliability of the value
shown [61].

CONTRACT.   Writ in the Superior Court dated February
21, 1973.
The action was tried before Connolly, J.

The Supreme Judicial Court granted a request for direct appellate review.

*James D. St. Clair (William Lender & Kevin P. Curry* with him) for the defendant.

*Francis J. DiMento (Thomas C. Cameron* with him) for the plaintiff.

HENNESSEY, J.  This is an appeal by the defendant from a judgment rendered against him as the personal representative of the estate of Maxwell Evans Richmond (the decedent).  The action was in the nature of quantum meruit and sought recovery for services rendered by the plaintiff in reliance on the decedent's oral promise to leave a will bequeathing his entire estate to her.

A jury trial in the Superior Court resulted in a verdict for the plaintiff in the amount of $1,350,000.  The defendant saved exceptions to the denial of his motion for a directed verdict, as well as to the admission of certain evidence, to portions of the instructions as given and to the refusal to instruct as requested; additionally, he appealed from the denial of his motion for a new trial. Subsequently, this court granted a request for direct appellate review.

The defendant does not now argue that the judge's instructions to the jury were erroneous.  Rather, he argues that there was error in the admission in evidence of the probate inventory of the decedent's estate on the issue of damages.  He also argues that a verdict should have been directed in his favor (1) because the contract was illegal, and (2) because, had the inventory been excluded from evidence, there would have been no evidence on the issue of damages.  Finally, the defendant argues that it was error to deny his motion for a new trial because of excessive damages.

We conclude that the defendant's motion for a directed verdict was properly denied but that there must be a new trial, on the issue of damages only, because of error in allowing in evidence the probate inventory of the decedent's estate.

The facts are as follows: The plaintiff testified that she met the decedent in November, 1962, and shortly thereafter accepted his proposal of marriage. She was thirty-six years of age at the time, divorced, and had a fifteen-year old son; she was then employed as a secretary. The decedent was a wealthy, forty-nine year old bachelor whose holdings included licenses to operate three radio stations. Later the plaintiff became a stockbroker, earning about $20,000 a year.

About a year after they met, in October, 1963, the decedent stated that he had a "mental hangup" about marriage and asked to be released from the engagement; he said, however, that if the plaintiff would agree to "stay" with him, he would bequeath his entire estate to her at his death. The plaintiff agreed. There was other evidence directly corroborating the agreement. During the eight-year period between October, 1963, when the bargain was made, and October, 1971, when the decedent died, there was evidence that the decedent, on several occasions, made statements to the plaintiff and other persons which could be found to be an acknowledgment by him of the original agreement. The last such occasion was on July 26, 1971, about three months before his death.

There was also evidence from which it could be found that the plaintiff kept her part of the agreement in reliance on the decedent's promise. There was detailed evidence of many services, of a social and domestic as well as of a business nature, performed by the plaintiff for the decedent over the eight-year period. There was evidence of many instances of sexual intercourse between the plaintiff and the decedent. The decedent died in October, 1971. The inventory value of his estate, which the judge permitted to be shown in evidence, was approximately $7,232,000.

1. It is clear that the oral agreement involved a promise to make a will, and as such was not binding. G. L. c. 259, § 5. Nevertheless, if the oral agreement were

legal and not contrary to public policy, the plaintiff could recover the fair value of her services.   *Draper v. Turner,* 339 Mass. 616, 619 (1959).   *Heil* v. *McCann,* 360 Mass. 507, 511 (1971).

We consider first the defendant's argument that a verdict should have been directed in his favor on the ground that the contract was illegal.   The argument offered is that as matter of law the agreement included sexual intercourse or cohabitation as part of the consideration, and that such a contract will not be enforced as against public policy.   See G. L. c. 272, §§ 16, 18, as to criminality; *Otis* v. *Freeman,* 199 Mass. 160 (1908); *Zytka* v. *Dmochowski,* 302 Mass. 63, 65 (1938); Restatement of Contracts § 598 (1932 and Supp. 1935).   Further, the argument is that even if the agreement did not expressly include illicit terms, the unlawful performance of the bargain precludes recovery.   *Tocci* v. *Lembo,* 325 Mass. 707, 710 (1950).[1]

We conclude that there was no error in the denial of a directed verdict because these issues were properly submitted to the jury under appropriate instructions, and the jury obviously reached conclusions favorable to the plaintiff.[2]

---

[1] In the *Tocci* case at 710, we quoted from 6 S. Williston, Contracts, § 1761 (2d ed. 1938): ". . . if the performance actually rendered by the plaintiff is something in itself forbidden by law, the fact that the bargain was in such general terms as to cover either the illegal performance or a lawful performance, and that both parties originally had no intention to have the performance unlawful, will surely not justify recovery on the bargain if the illegality is serious or more than an incidental part of the performance. . . . Not the illegality of the contract, but the illegality of the plaintiff's conduct either in entering into or in performing the contract is the true ground for denying recovery."

[2] It could persuasively be argued that only naive persons would conclude that sexual intercourse was not central to the arrangement between the parties.   Nevertheless that reasoning is not relevant, since the evidence as summarized, *infra,* warranted the submission of the issues to the jury.

The defendant relies on several rules of law, which we state for purposes of analysis. Those rules are as follows. Where there is no conflicting evidence as to the terms of an oral contract, the construction of those terms is a matter of law for the judge rather than the jury. *Bogash* v. *Studios, Inc.*, 303 Mass. 207, 208 (1939). *Hiller* v. *Submarine Signal Co.*, 325 Mass. 546, 549-550 (1950). Thus, where the terms of the contract are not disputed, whether that contract is void as in contravention of public policy or otherwise illegal or in violation of law is a question of law for determination by the judge. *Adams* v. *East Boston Co.*, 236 Mass. 121, 127 (1920); *Reuter* v. *Ballard*, 267 Mass. 557, 562-563 (1929). A party's admissions in testimony at the trial are binding on the party in the absence of other evidence more favorable to the party. *Murphy* v. *Smith*, 307 Mass. 64, 66 (1940). *Perry* v. *Hanover*, 314 Mass. 167, 170 (1943). Massachusetts law will not enforce, even indirectly through an action in quantum meruit, a contract to commit a crime. *Otis* v. *Freeman*, 199 Mass. 160 (1908). *Zytka* v. *Dmochowski*, 302 Mass. 63, 65 (1938). Massachusetts has a strong public interest in ensuring that its rules governing marriage are not subverted. *French* v. *McAnarney*, 290 Mass. 544, 546 (1935). Cf. *Commonwealth* v. *Munson*, 127 Mass. 459 (1879); *Boltz* v. *Boltz*, 325 Mass. 726 (1950). Even if, at the time of contracting, the parties to a contract did not mean the services to be rendered to include illegal conduct, there can be no recovery if the performance was in fact illegal, and the illegality was serious and not merely an incidental part of the performance of the agreement. *Tocci* v. *Lembo*, 325 Mass. 707 (1950). *Hawes Elec. Co.* v. *Angell*, 332 Mass. 190, 191-192 (1955). The question whether the illegality was serious or more than an incidental part of the performance has been held in some cases to be an issue of law which should not be left to the jury. *Woodbury* v. *Sparrell Print*, 198 Mass. 1, 9 (1908). *Hawes*

*Elec. Co.* v. *Angell, supra* at 192.    *Buccella* v. *Schuster,*
340 Mass. 323, 325 (1960).

Applying these principles to the instant case, the de-
fendant argues that sexual intercourse was within the
scope of the agreement and that the plaintiff therefore
can recover nothing for her services; that additionally, or
in the alternative, the plaintiff's performance in an illegal
manner, by indulging in sexual intercourse, entitles her to
no compensation, since her illegal performance was
serious and not merely incidental to the agreement; that
the illegality of the agreement and the illegality of the
performance thereof were established as matter of law by
the plaintiff's admissions on the witness stand at the trial,
which the defendant argues were binding on her since
there was no other evidence more favorable to her as to
these issues; and that a directed verdict for the defendant
was therefore required.

The plaintiff argues that public policy does not forbid
her recovery in this case.    For this proposition, she cites
*Silver* v. *Graves,* 210 Mass. 26, 30 (1911), *Hiram Ricker
& Sons* v. *Students Intl. Meditation Soc.,* 501 F.2d 550,
556 (1st Cir. 1974), and *Buccella* v. *Schuster,* 340 Mass.
323, 326 (1960).    She particularly relies on *Common-
wealth* v. *Balthazar,* 366 Mass. 298 (1974).    The further
issue arises, as emphasized by the defendant, whether the
latter case is apposite as to public policy considerations
where (as argued here) the sexual relationship is asserted
to be a matter of contract.    We need not reach this issue
because of our conclusion as reasoned below that the
question as to whether illegality was an inherent part of
the agreement was a question of fact for the jury's deter-
mination.

The judge, in denying the defendant's motion for a
directed verdict, submitted to the jury the issue of il-
legality, both as to the content of the agreement and the
nature of the plaintiff's performance.    There was no
error.    We accept, at least for analytical purposes, the
rules of law relied on by the defendant.    Nevertheless,

applying those principles in this case, we do not reach the result urged by the defendant because the evidence was not uncontroverted as to these issues, and, as stated by the defendant, construction of the contract terms is for the court rather than the jury "[w]here there is *no* conflicting evidence as to . . . those terms" (emphasis supplied). Where the evidence is disputed as to the terms or performance of an oral agreement, or the meaning of words used by the parties, the matter should be left to the jury. *Rizzo* v. *Cunningham,* 303 Mass. 16, 20-21 (1939). In this case there was disputed evidence, some of which was sufficiently favorable to the plaintiff to warrant submission of the issues to the jury.

Thus, the plaintiff's testimony as to the terms of the contract contained no reference to sexual intercourse as follows, viz.: "He said he couldn't lose me, either, and then he said, 'I have been thinking about something, and I want you to listen to me.' He said: 'I have been looking for you all my life. You're the perfect woman for me.' He said: 'If you will agree to stay with me without marriage, you will be happy. I will see that your life will be happy. There's only one thing you won't have. You won't have the emotional security a woman has when she knows she is married, but I will make it up to you. I am going to make my will out right away. Everything I have when I die will be yours. I owe nothing to anyone else.'"

The defendant contends, however, that other evidence, particularly admissions by the plaintiff, required a conclusion that the contract included an agreement for sexual intercourse. The plaintiff had testified of many instances of sexual relations with the decedent. However, on this issue as well as on the related issue of illegality of performance, there was other evidence, including other testimony from the plaintiff, which was more favorable to the plaintiff. Therefore the issue was for the jury's consideration. From the totality of the evidence the jury were warranted in inferring that the illicit relations were

no part of the contract, and were no more than an incidental part of the plaintiff's performance.

Thus, inferences favorable to the plaintiff were supported by the evidence. For example, the plaintiff testified that, throughout their relationship, she maintained her own apartment and paid all her own household bills; that the decedent bought her no expensive gifts, furs, cars, jewelry or diamonds and made no contribution to her son's tuition at college; that she did not even accompany him on his annual vacations, customarily taken at Christmastime, until 1966 or 1967, because she felt that she owed it to her son to be home with him during his Christmas vacations from school; and that the decedent, with the plaintiff's knowledge, took another woman with him when the plaintiff could not accompany him on his annual vacation.

Further, the witness Norman Soloman, who shared the decedent's apartment, testified that he never saw the plaintiff or any trace of her at the former residences of the decedent and that decedent slept in his own apartment every night. The witness recalled only one time when he saw the plaintiff at the decedent's last residence. Solomon further testified that the decedent "traveled a lot with . . . [a certain woman]," both before and after 1962, and "they made many trips together." Solomon quoted the plaintiff as saying, on one occasion, that both she and the decedent were free to "see" whomever of the opposite sex they might want to see.

A female witness, the "certain woman" referred to, supra, called by the defendant, testified that she took trips with the decedent each year between 1954 and 1958, inclusive. During the summer of 1963, she stayed at the decedent's apartment for about ten days. In 1964, she went on a trip to Jamaica with the decedent. In 1965, she went to St. Thomas and Puerto Rico with him. In 1967, she spent a week in Bermuda with him and then spent the entire summer at his apartment in Boston. Over the 1968 New Year's holiday, she went on a thirteen-

day cruise with the decedent and, later in that year, went to St. Thomas with him. In 1969, she spent about a week with him at his summer residence in Marblehead and, in November of that year, the two of them went together to Florida for a week.

From all of this evidence the jury were justified in concluding that the sexual aspect of the relationship between the plaintiff and the decedent was no part of the bargain between the two, and no more than incidental to their relationship.

The defendant also argues that if the inventory of the probate estate had been excluded from evidence, as the defendant contends that it should have been, there would have been no evidence before the jury as to the value of the plaintiff's services. For this additional reason, the defendant says, there should have been a directed verdict for the defendant. There is no merit to this contention. Of the many and varied services as to which the plaintiff presented evidence, at least some of them were of such a routine and ordinary nature as to make their fair value a matter of common knowledge for the jury's consideration. See, e.g., *Mason* v. *Black*, 341 Mass. 347, 349 (1960).

It follows from all that we have said that there was no error in the judge's denial of the defendant's motion for a directed verdict.

2. We turn now to the second issue argued by the defendant, viz.: that it was error to admit in evidence, over the objection and exception of the defendant, the Probate Court inventory showing the value of the estate. Actually there are two related questions raised here: (1) whether evidence as to the value of the estate is admissible and (2) if such evidence is admissible, whether the probate inventory is an appropriate form of proof.

We consider first the question of the admissibility of the value of the estate. There is a divergence of opinion in other jurisdictions on the issue whether evidence of the contract terms, including value bargained for, shall be admitted as evidence of the value of the services sought

by an action in quantum meruit. This divergence also exists with respect to the narrower question before us, i.e., whether the value of the decedent's estate was properly admitted as evidence of the value of the services rendered by the plaintiff on the basis that the value of the estate is the "price" put on the services by one of the contracting parties. There is precedent in somewhat similar Massachusetts cases for the admission of such evidence (see, e.g., *Downey* v. *Union Trust Co.,* 312 Mass. 405, 413-414 [1942]; *Turner* v. *White,* 329 Mass. 549, 555 [1952]) and the judge here undoubtedly relied on those decisions in making his rulings. We conclude that those decisions are controlling in the instant case and that the value of the estate was admissible in evidence.

There is substantial authority both judicial and scholarly which favors admissibility. Professor Corbin is emphatic as to the admissibility of this evidence: "No one doubts, however, that the contract price or rate agreed upon by the parties is admissible in evidence to show what is the reasonable value of the performance that the defendant has received." 5 A. Corbin, Contracts § 1113 (1964). The annotation in 21 A.L.R.3d, 9, 18 (1968) is further supportive of admissibility, noting that there is "considerable authority" for admitting the contract price terms as evidence of the value of the services, under the theory that it is an admission against interest and is evidence of the general making and performance of the contract. The annotation further cites authority for admitting the contract price terms although the contract is not enforceable as violative of the statute of frauds, in cases where the promise, as here, is to transfer an estate in consideration of services, and concludes that many courts have admitted the value of the estate in these cases. See § 9 [a] at 44-54. See, e.g., *Burns* v. *Kieley's Estate,* 242 Mich. 668 (1928); *Norton* v. *McLelland,* 208 N.C. 137 (1935); *Richter* v. *Derby,* 135 Ore. 400 (1931); *Cochran* v. *Bise,* 197 Va. 483 (1955).

On the other hand, some courts have held that such evidence should be excluded. *Quirk* v. *Bank of Commerce & Trust Co.* 244 F. 682, 688 (6th Cir. 1917). *Grant* v. *Grant*, 63 Conn. 530, 543 (1893). *Wallace* v. *Long*, 105 Ind. 522, 532 (1886). *Lemire* v. *Haley*, 92 N.H. 358, 361 (1943). *Lisk* v. *Sherman*, 25 Barb. 433, 439 (N.Y. Sup. Ct. 1857). *Hertzog* v. *Hertzog's Admr.*, 34 Pa. 418, 437 (1859). Thus it has been said that in cases such as the instant one, where the promised value was not shown to be known to both parties, and where the duration of the services was probably substantially shorter than the decedent contemplated, such evidence is of no probative force in ascertaining the reasonable value of the service. *Quirk* v. *Bank of Commerce & Trust Co.*, *supra* at 688. Also it has been held that in cases like the instant one the relationship of this evidence to the decedent's opinion as to the value of the services rendered is speculative at best, for it is at least as probable as not that the decedent regarded the leaving of everything he had to the plaintiff as a gift rather than a recompense. *Lemire* v. *Haley*, 92 N.H. 358, 360-361 (1943).

Subscribing to the reasoning of some of these cases, the defendant seeks to distinguish *Turner* v. *White, supra,* and *Downey* v. *Union Trust Co., supra,* on the basis that in the instant case the evidence of the value of the estate, due to unique factors, has no probative value as to the value of the plaintiff's services, while this was not true in the *Turner* and *Downey* cases. In those cases, the defendant submits, the evidence of the value of the estate was sufficiently probative of the reasonable value of the plaintiff's services, or more specifically the decedent's opinion as to that value, in that (1) the promised value in both cases was known to both parties or, at least, easily determinable; (2) the promised value did not fluctuate over the period of plaintiff's performance or, if it did, the fluctuation favored the defendant; and (3) the actual performance rendered probably reached what both

parties originally considered would be the duration of the performance.

The plaintiff emphasizes that this court is among those that have held that it was proper to admit evidence of the value of the promised legacy or devise, citing the *Turner* and *Downey* cases. In the *Downey* case it was said: "The plaintiff is not suing for damages for a breach of the oral contract, and the value of the annuity is not the measure of damages. . . . But the value of the annuity which the testator promised to give as the consideration for the services could be shown in evidence as an admission of what the testator considered the services worth." 312 Mass. at 413-414.

We are not persuaded that we should distinguish the instant case from the *Turner* and *Downey* cases. It is not at all clear that the instant case differs significantly in its facts from the two prior cases, as to the three aspects emphasized by the defendant, and some weight is to be given to the fact that in those cases as in this one the decedent continued knowingly to accept the services of the plaintiff up to the time of the decedent's death. Indeed, there was evidence that the decedent in the instant case reaffirmed his promise just three months before his death.

We conclude that in the instant case appropriate proof of the value of the decedent's estate was admissible in evidence, and should be admitted at any subsequent retrial of the case.[3] Much of the reasoning advanced in favor of a directed verdict should receive consideration by the judge as substance for cautionary instructions to the jury against misuse of the evidence.

3. We turn now to a consideration of whether the probate inventory was an appropriate form of proof of

---

[3] An interesting issue has been suggested: As of what date should the value of the estate be shown? Is it the date of the agreement or the date of the death? In the instant case the issue is not pressed, presumably because there was evidence that the decedent renewed his promise just a few months before his death.

the value of the estate, and whether, if it was not, it was error to admit the inventory in evidence in this case. We conclude that it. was error.

The asset value was shown on the inventory as approximately $7,232,000. We have no way of knowing whether this amount accurately, or even remotely, represents the net value of the estate. We take notice that taxes, debts and other appropriate charges will substantially reduce this gross value. We assume that the inventory amount shown had some basis in fact, but the value of an estate is not shown by a list of its assets alone.

As a general rule the parties to an action have a right to show all material facts, however great the prejudice aroused by their narration. *Godfrey* v. *Old Colony St. Ry.* 223 Mass. 419, 422 (1916). "[E]vidence admissible for one purpose, if offered for that purpose in good faith, is not made inadmissible by the fact that it could not be used for another with regard to which it has a tendency to influence the mind." *Whipple* v. *Rich,* 180 Mass. 477, 479 (1902). In determining whether the evidence offered serves any valid purpose we apply the rule that it must merely render the desired inference more probable than it would be without the evidence. See McCormick, Evidence § 185, at 437 (2d ed. 1972); *Crowe* v. *Ward,* 363 Mass. 85, 89 (1973). We are influenced by the general view that relevant evidence should be admitted unless there is a quite satisfactory reason for excluding it. *Crowe* v. *Ward, supra.* Compare Federal Rules of Evidence, Rules 401-403, 28 U.S.C. app. (Supp. V, 1975) (as enacted by Pub. L. No. 93-595, January 2, 1975, effective July 1, 1975).

Considering all of these principles, it is not quite accurate to say that the admissibility of evidence, if it is relevant for at least one purpose, ordinarily rests in the discretion of the judge. *Howe* v. *Boston,* 311 Mass. 278, 282 (1942). On the contrary, in the great majority of instances the offering party may be entitled to the evidence as a matter of right. Of course, it is possible that

the evidential value may be so overwhelmed by the prejudicial effect as to make it advisable to exclude the evidence. *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 279 (1962), cert denied, 371 U.S. 852 (1962). *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 817 (1973). Compare Federal Rules of Evidence, Rule 403, 28 U.S.C. app. (Supp. V, 1975) (as enacted by Pub. L. No. 93-595, January 2, 1975, effective July 1, 1975). In such an instance the question of admissibility is to be determined in the sound discretion of the judge. *Horowitz* v. *Bokron*, 337 Mass. 739, 742 (1958). *Commonwealth* v. *D'Agostino, supra* at 279.

There is one further principle that we consider peculiarly applicable to the extraordinary circumstances of this case,[4] viz.: "A trial judge should ascertain by suitable preliminary inquiry, before admitting such evidence, at least that it is sufficiently verified, that it reflects the situation fairly, and that it is likely to be of sufficient assistance to the jury to warrant its use." *Horowitz* v. *Bokron, supra.* No such preliminary inquiry was accomplished here. In this case we have held that the value of the estate is relevant, while at the same time we have recognized the great potentiality for unfair prejudice even if the value of the estate were accurately shown. The likelihood of irremediable unfair prejudice would be greatly increased if the value of the estate were substantially overstated. We do not denigrate from the principles stated above which generally favor the admissibility of evidence. Nevertheless, in the special circumstances of this case we conclude that a preliminary showing of reliability was required before the amount of the inventory, which may or may not have been reflective of the value of the estate, was disclosed to the jury. While in most cases the requirements of fairness would be

---

[4] The fact that the disputed inventory shows the amount of more than $7,000,000 makes the circumstances "extraordinary," in our view.

met by the fact that the defendant had the opportunity to present rebuttal evidence, we believe that is not the case here.

A majority of the court concurs in the reasoning in part three of this opinion and in the decision to grant a new trial in this case.

4. The question remains whether the new trial of this case should be as to all issues, or merely as to the issue of damages. The error here affected only the damages aspect and was not concerned with the liability issue. "The guiding principle is that, although a verdict ought not to stand which is tainted with illegality, there ought to be but one fair trial upon any issue, and that parties ought not to be compelled to try anew a question once disposed of by a decision against which no illegality can be shown." *Simmons* v. *Fish*, 210 Mass. 563, 568 (1912). See, generally, *New England Bldg. Trust* v. *Montaup Elec. Co.*, 353 Mass. 242, 244 (1967); *Kaye* v. *Newhall*, 360 Mass. 701, 704 (1972). We conclude, therefore, that the judgment should be reversed and the case remanded to the Superior Court for a new trial limited to the issue of damages.

*So ordered.*