**William G. and Mona ROWELL**
v.
**PLYMOUTH-HOME NATIONAL BANK et al.**

**No. 123406**

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

**June 5, 1980**

Counsel of Record
George L. Gochros, Gary F. Sherson, Plaintiff
Constance V. Vecchione, William D. Crosby, Ira L. Lipman, Defendant

## FINDINGS, RULINGS AND ORDERS

### Introduction

In their Complaint the plaintiffs William G. ("William") and Mona

("Mona") Rowell claim that they provided certain services to one Joseph F. Jones ("Jones"), since deceased, at Jones' request and in return Jones promised to do certain things for them which they say he failed to do. William and Mona seek to have enforced against Jones' trust and estate the promises Jones purportedly made to them.

## Findings of Fact

After a trial of the above action, from the evidence by way of testimony, exhibits, stipulations and inferences therefrom, I find the facts material and relevant to the relief sought by William and Mona in their Complaint as follows.

In 1970 when William was approximately 65 years old, he became acquainted with Jones who was then approximately 80 years old and married to Julia Jones who was several years younger than he. William was, at that time, a consultant and inventor who held between thirty and forty patents. Beginning in 1970 and extending into 1971, 1972 when William retired, and 1973, William and Jones saw each other approximately eight to ten times each year. Beginning in 1972, William and Jones involved their spouses in their friendship and on occasions would visit each others' homes. In 1973, William had constructed and moved into a home about three miles from Jones' home. Beginning in 1974, at Jones' request, William, who was very "handy", performed minor repair work at Jones' home. Jones' home, which was quite substantial and which was situated on approximately forty acres of land, required much upkeep which Jones, as he grew older, was increasingly unable either to do or to arrange to have done. Jones, in order (as he put it) to conserve money, requested William to provide that upkeep and, as he also put it, in return he would "take care of him" after he died.

In early 1976, after Julia Jones suffered a stroke, Jones became increasingly dependent upon William to provide upkeep to and for his home and to transport him to and from the nursing homes where Julia lived after her stroke. William provided such upkeep and transportation. Beginning in mid-1976, Jones made what I find and rule are specific and unambiguous promises to William in return for William's and Mona's services which they performed, which promises are set out in Jones' writing in the exhibits to the Complaint as follows.

On or about May 3, 1976, Jones in return for William's services to him, gave to him "free access to this property (Jones' property) as long as he lives". See Exhibit A to the Complaint.

On July 10, 1976, Jones in return for William's and Mona's services to him which were performed by them, promised to make a will leaving $5,000 each to William and to Mona and an automobile to William. Also in return for William's services to him which were performed on that same date, Jones promised that "as long as he lives, Bill Rowell may continue to have his garden here and also have use of my rotary tiller". See Exhibit B to the Complaint.

On May 9, 1977, Jones in return for William's and Mona's services to him which were performed by them, promised to make a will leaving to William and Mona each the additional amounts of $10,000, plus the sum of $5,000 for an ocean cruise, as well as the so-called "Fewer lots" if Jones owned that property at his death. See Exhibit C to the Complaint.

On May 23, 1977, Jones in return for William's and Mona's services to him, which were performed by them, agreed to make a will leaving two paintings of her choice from paintings made by Jones' mother to Mona and leaving his shotgun, his rifle and a "Toro tiller" to William. See Exhibit D to the Complaint.

Some time in 1977, Jones in return for William's and Mona's services to him, which were performed by them,

confirmed that he was to make a will leaving to William and Mona each the amount of $25,000 "in addition to the other things I am giving to you". See Exhibit E to the Complaint.

On August 23, 1977, Jones in return for William's services to him, which were performed, gave to William by delivery his "Toro-Tiller". See Exhibit I to the complaint.

In sum, as evidenced by several exhibits to the Complaint, in return for William's and Mona's services to him, which were performed by them, Jones made specific promises to make a will giving to them the total amount of $25,000 each, as well as real property consisting of the so-called "Lesser lots" to William and the other items of personalty as set out above.

As can be seen from the deterioration of Jones' handwriting on the various exhibits to the Complaint, in late 1976 and throughout 1977, his health deteriorated and, on November 10, 1977, Jones died. At his death Jones left an estate consisting of cash in the amount of $147,000.00, his home which was then worth approximately $225,000.00, $5,000.00 in insurance, a note receivable in the amount of $70,000.00, and twenty acres owned by Jones alone consisting of the so-called "Fewer lots", which is land-locked, which has no right-of-way, and which has an assessed value of $900.00. Despite his promises to the contrary, Jones never made a will leaving anything to either William or Mona as he had promised.

On the basis of the above findings, I find that in fact there was an agreement to make a will by Jones which was supported by the valuable consideration in the form of personal services from William and Mona to Jones.

**Rulings of Law.**

I find and rule that the fair value of the services which William and Mona are entitled to recover from the estate of Jones is the amount that Jones promised to leave to them as evidenced in the exhibits to the Complaint. See **Turner v. White,** 329 Mass. 549, 552 and 555 (1952), and **Hollister v. Old Colony Trust Co.,** 328 Mass. 225, 228 (1951). In determining the value of these services performed by William and Mona at the request of Jones, I have considered all relevant circumstances, including the situation and relationship of the parties, the nature and extent of the services performed by them and Jones' estate's value. See **Greene v. Richmond,** 369 Mass. 47 (1975).

**Order.**

In sum, I ORDER judgment to enter for William and Mona each in the sum of $25,000.00 and I ORDER that Jones' estate convey the "Lesser lots" to William and also to provide the items of tangible personal property which are specified above which Jones agreed to provide to William and Mona.

**Paul G. Garrity**
**Justice of the Superior Court**