MARVIN H. MARGOLIES *vs.* ROLAND G. HOPKINS.[1]

Suffolk.  September 10, 1987. — November 5, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Contract,* Validity, Parties, Consideration, Personal services, Illegality. *Public Policy. Attorney at Law,* Compensation.

Where a man and woman, who were not married to each other, and were parties to a domestic dispute, involving actions by him to evict her from his home and to obtain custody of their child and by her for breach of contract, settled their differences by agreeing that she, their child, and her two children from a marriage which had terminated would return to live with him and that he would "take care of" any attorney's fees incurred by her in court proceedings surrounding their dispute, her attorney was a creditor beneficiary entitled to maintain an action against the man for recovery of his fee. [90-93]

In an action by an attorney seeking to recover his fee as the creditor beneficiary of an agreement between a man and a woman, who were not married to each other, arising out of a domestic dispute, an award by the judge, as trier of fact, of $18,500 was within the range of his reasonable discretion, in view of his warranted findings that the claim involved was a novel one, that the attorney had had many years of experience, and that a large amount of money was involved. [93-94]

CIVIL ACTION commenced in the Superior Court Department on March 12, 1984.

The case was heard by *Haskell C. Freedman,* J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*George M. Ford (Andrew P. Brown* with him) for the defendant.

*Marvin H. Margolies,* pro se.

---

[1] Leslie L. Hopkins was a defendant below but is not before us. Judgment was not entered against her with respect to the claim involved in this appeal, and the plaintiff has not challenged that result.

WILKINS, J. The defendant Roland G. Hopkins (Roland) challenges a judgment in favor of the plaintiff attorney which requires Roland to pay certain attorney's fees incurred by Leslie L. Hopkins (Leslie).[2] The plaintiff asserted that, as part of the resolution of a domestic but nonmarital dispute, Roland agreed with Leslie to satisfy her debt to the plaintiff arising out of his representation of her in that dispute. We took Roland's appeal on our own motion and now affirm the judgment.

The judge, who heard the case without a jury, found the following facts. Leslie and Roland lived together for four years prior to June, 1983, and they had a child. Leslie had been married previously and had two children from that marriage. In June, 1983, Leslie retained the plaintiff to represent her in Plymouth Probate Court proceedings that Roland had brought to evict her from his house in Duxbury where they had been living and to obtain custody of their child. The plaintiff thereafter commenced a breach of contract action in Plymouth Superior Court on behalf of Leslie against Roland and obtained a real estate attachment.

In the fall of 1983, Leslie and Roland agreed, without the plaintiff's participation, to settle both actions. They agreed that she and the three children would return to live with Roland and that he would support them. The judge found that Roland agreed to pay Leslie's legal fees in both the Probate and Superior Court proceedings. They resumed living together in Roland's house in Duxbury.

In response to Leslie's request, the plaintiff submitted a bill for his services. Leslie advised the plaintiff that Roland would not pay the bill in the form submitted and that he wanted an itemized bill. Roland also wrote the plaintiff and requested an itemized bill. In January, 1984, the plaintiff sent a bill itemizing his services. On March 8 Roland wrote and sent a letter, which Leslie never saw, to the plaintiff over Leslie's purported signature suggesting the bill was too high.[3]

---

[2] Although Leslie acquired the surname Hopkins in the course of her relationship with Roland, they were not married at any time relevant to this appeal.

[3] Roland and Leslie separated again in December, 1984, and since have been living apart.

The judge found it entirely reasonable that Roland would make an agreement with Leslie to pay her counsel fees as part of the settlement of the Superior Court action. The judge also inferred Roland's acknowledgment of that obligation from Roland's intentional failure to appear at the trial (an inference Roland does not argue was unwarranted) and from his sending of the March 8 letter as if it had come from Leslie.

The judge found that Leslie had no specific fee arrangement with the plaintiff and that the amount of the bill ($18,500) was a fair and reasonable fee for the plaintiff's services. He noted that the plaintiff should have maintained time records, but did not. The judge ruled that the plaintiff was not limited to his regular hourly charge in 1983 of $125. The judge also noted that there were several relevant factors in determining a lawyer's fee, citing S.J.C. Rule 3:07, DR 2-106 (B), as appearing in 382 Mass. 772 (1981). The judge ruled that the plaintiff was entitled to a fair and reasonable fee and that a creditor beneficiary could recover on a contract to which it is not a party.

1. Roland grants that an intended beneficiary may recover on a contract to which it is not a party. See *Flattery* v. *Gregory,* 397 Mass. 143, 148-149 (1986); *Rae* v. *Air-Speed, Inc.,* 386 Mass. 187, 195-196 (1982); *Choate, Hall & Stewart* v. *SCA Servs., Inc.,* 378 Mass. 535, 544-546 (1979). He argues that the plaintiff was not an intended beneficiary of the agreement between Roland and Leslie and that, in any event, the purported agreement between them was not a valid, enforceable contract.

Roland challenges as clearly erroneous the judge's findings which indicate that the plaintiff was an intended beneficiary of the agreement between Roland and Leslie. Roland relies on Leslie's testimony that he never actually said that he would pay the bill but only that he would take care of it. Roland's statement, however, surely warranted the judge's conclusion that Roland agreed to satisfy Leslie's obligation to the plaintiff, whether in the amount of the bill or in some lesser amount.[4]

---

[4] The plaintiff testified without objection that Leslie told him that as part of the resolution of their dispute "Roland Hopkins would pay her legal fees involved in both of the cases."

The plaintiff represented himself and, without objection, presented his testimony in a narrative form. In such situations a question and answer

The judge also was warranted in concluding that Roland's promise to take care of Leslie's legal expenses was part of the terms under which she agreed to settle the lawsuits between them and to return with the children to live with Roland. The ruling that the plaintiff was a creditor beneficiary entitled to maintain this action was correct. See *Choate, Hall & Stewart* v. *SCA Servs., Inc., supra;* Restatement (Second) of Contracts § 302 (1) (a) (1981).

Roland further claims that the plaintiff may not prevail because Leslie had no enforceable agreement on which the plaintiff in turn could rely. Roland impliedly argues that there was no consideration for his promises because Leslie's claim against him was a "palimony" claim which is not recognized in this Commonwealth and its abandonment thus was not valuable consideration for his promise to pay the plaintiff's fees. Roland further asserts that the agreement is tainted with illegality and, therefore, is unenforceable because it includes Leslie's agreement to live with him.[5] Roland's argument might fairly be viewed as a collective assertion that part of the purported consideration of Roland's promises was a nullity and the balance was illegal.

The fact that Leslie's contract action ultimately might have failed (see *Davis* v. *Misiano,* 373 Mass. 261, 263 n.1 [1977]) does not mean that its abandonment was not sufficient consideration to support the contract between Roland and Leslie. Abandonment of a claim brought in good faith is good consideration for a promise even if the claim ultimately might have been unsuccessful. *Melotte* v. *Tucci,* 319 Mass. 490, 492 (1946). *Clark* v. *Gamwell,* 125 Mass. 428, 430-431 (1878). In addition, Leslie's agreement to return with Roland's son provided consideration for Roland's promise by ending the

format is generally preferable because it permits objections to be raised in the normal course.

[5] Roland's answer did not plead illegality, nor did he argue it below. He did plead the Statute of Frauds which does not, however, apply to an oral promise to the promisee but only to one made to the third party. *Perkins* v. *Littlefield,* 5 Allen 370 (1862). See *Sokol* v. *Nathanson,* 317 Mass. 325, 327 (1944).

custody dispute. Moreover, that agreement also involved the furnishing of care and companionship (quite apart from sexual relations) which is valid and legal consideration. See *Green* v. *Richmond,* 369 Mass. 47, 53-55 (1975).

We turn then to Roland's assertion that the agreement was so tainted with illegality that it is unenforceable as a matter of public policy because it was an agreement for unlawful cohabitation and sexual relations. See G. L. c. 272, § 16 (lascivious cohabitation, as appearing in St. 1987, c. 43, deleting prohibition of cohabitation); G. L. c. 272, § 18 (fornication).[6] The issue of illegality or unenforceability on public policy grounds was not pleaded as a defense (Mass. R. Civ. P. 8 [c], 365 Mass. 750 [1974]) and not otherwise raised at the trial level. This court will consider such a claim raised for the first time on appeal only if the facts in support of the claim are undisputed. *O'Donnell* v. *Bane,* 385 Mass. 114, 120 (1982), and cases cited. Because the issue was not raised below, the judge made no findings on the point.

The record does not show on undisputed facts that illicit sexual relations were an inherent aspect of the agreement or a "serious and not merely an incidental part of the performance of the agreement." *Green* v. *Richmond, supra* at 51. There was no testimony that illicit sexual relations were involved in the agreement or in its performance. We recognize that resumption of sexual relations presumably was an expected consequence of Leslie's return to live with Roland (see *id.* at 50 n.2), but such an observation alone does not show indisputably that the agreement by its terms or in its performance is so against public policy as to be unenforceable. If there had been an undisputed showing of illegal activity in the performance of the agreement, the circumstances could have then been evaluated using the various factors set forth in *Town Planning & Eng'g Assocs.* v. *Amesbury Specialty Co.,* 369 Mass. 737,

---

[6] We observe but pass by the question whether an agreement by the parents of an illegitimate child to live together with that child, which at most would involve conduct treated as a misdemeanor (and not often prosecuted), contravenes public policy to the extent that collateral aspects of that agreement should not be enforced.

745-746 (1976). See Restatement (Second) of Contracts § 178 (1981). This case falls into the same category as *Green* v. *Richmond, supra,* where the question was properly one for the trier of fact. Roland did not seek to present the defense to the trial judge and, on this record, it is too late to do so successfully on appeal.

2. The $18,500 fee awarded was not excessive, and the judge's findings and rulings were adequate to support his conclusion.

The plaintiff was entitled to a fair and reasonable fee determined by the consideration of various relevant factors. *Mulhern* v. *Roach,* 398 Mass. 18, 24 (1986). *First Nat'l Bank* v. *Brink,* 372 Mass. 257, 264-265 (1977). *Cummings* v. *National Shawmut Bank,* 284 Mass. 563, 568-569 (1933). See S.J.C. Rule 3:07, DR 2-106 (B). No one factor, including time expended or customary hourly charges, is determinative. *Mulhern* v. *Roach, supra* at 27. *First Nat'l Bank* v. *Brink, supra* at 267. The facts, therefore, that the defendant spent not more than seventy-five hours on these matters and that his hourly rate in 1983 was $125 do not dictate that the award of $18,500 is excessive. The results achieved, the novelty of the contract claim, the attorney's many years of experience, and the amount in controversy (which in the plaintiff's view was over $1,000,000) are factors that would support the judge's determination.[7]

It is true that the judge did not explicitly discuss each factor that our cases and court rules list as possibly relevant. Indeed, there was no evidence bearing on some of these factors, such as the attorney's reputation, the demand for his services, and the customary charges for similar services by others. We have never required a judge to make a factor by factor analysis in findings and rulings in an attorney's fee action. Such a careful analysis, however, generally is helpful in lending support to a judge's conclusions. See *Mulhern* v. *Roach, supra* at 25-30; *First Nat'l Bank* v. *Brink, supra* at 266-267. In this case

[7] Although we do not rely on the circumstances, we are reassured in our conclusion by the fact that the trial judge, sitting on recall in the Superior Court, has had many years of experience dealing with domestic relations matters and attorney's fee awards as a judge of the Probate and Family Court.

involving a much smaller fee than those in the cases just cited, the judge had discretion to give weight to the factors, and his findings show that he was aware of them. That is enough.

*Judgment affirmed.*