ALEC RICH vs. JOSEPH I. DEAVELLAR, JR., executor.

Bristol.    April 10, 1974. — October 25, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Contract,* Implied contract, Parties.  *Damages,* For breach of contract.

A plaintiff who performed services in preparing a gravel pit for operation on land of a decedent in exchange for an oral promise by the decedent to convey the land to a corporation in which both he and the plaintiff were shareholders was entitled, after breach of the promise, to the fair market value of his services from the decedent's estate, even though the oral promise was within the Statute of Frauds and thus unenforceable. [634-636]

CONTRACT.    Writ in the Superior Court dated August 24, 1965.

The action was tried before *Collins,* J.

*Willis A. Downs* for the defendant.

*Melvin J. Levine* for the plaintiff.

ARMSTRONG, J.    This is an action of contract by which the plaintiff seeks to recover, on an account annexed, for work and labor performed and materials supplied in the improvement, expansion, and operation of a sand and gravel pit located on land owned by the defendant's testator (hereafter the deceased).[1]    The defendant pleaded the Statute of Frauds.    A second trial of the case before a jury[2] resulted in a verdict for the plaintiff in the

---

[1] The deceased was the original defendant in this action, but upon his death between the two trials of the action his executor was substituted as the defendant.

[2] After the first trial, in which the jury also returned a verdict for the plaintiff, a motion by the deceased for a new trial was allowed. No issues concerning the first trial are raised by this bill of exceptions.

amount of $3,500. The case comes to us on the defendant's exceptions to (1) the trial judge's denial of his motions for directed verdicts made at the close of the plaintiff's evidence and again at the close of all the evidence and (2) to the judge's refusal to enter a verdict for the defendant under leave reserved.

The evidence is summarized in its aspect most favorable to the plaintiff. In July, 1962, the deceased, who owned land on which there was a small, neglected gravel pit, asked the plaintiff if he would be interested in going into business with the deceased's son. The deceased told the plaintiff that if he would develop, expand and operate the gravel pit with the deceased's son, he would be paid from the proceeds of the sale of gravel. Subsequently the deceased suggested that the prospective business be incorporated and promised the plaintiff that he, the deceased, would deed to the corporation approximately seventeen acres of land including the gravel pit, the land to revert to the deceased when it was of no further use to the corporation. In accordance with these discussions the corporation was formed, the original shareholders being the plaintiff, the plaintiff's wife, the deceased, and the deceased's son. No consideration was paid for the stock.

On August 27, 1962, the plaintiff and the deceased's son began preparing the gravel pit for operation. Work done by the plaintiff included felling trees, extending the access road, setting up a temporary screening plant, and repairing the deceased's steam shovel. The plaintiff hired and paid others to help with the work. By some time in September the gravel pit was ready for operation; the plaintiff then helped in the processing and selling of sand, gravel, and stone.

The deceased, in spite of several requests by the plaintiff, never honored his promise to the plaintiff to deed to the corporation the land on which the gravel pit was located. On December 17, 1962, the deceased ordered the plaintiff off his land and told him not to return for

any purpose. The plaintiff had expected the corporation to pay him for his work from the profits of the sale of sand and gravel, but he never received payment from either the corporation or the deceased.

On this evidence the jury could find that the plaintiff and the deceased had struck a bargain by which the deceased promised to deed seventeen acres of his land, including the gravel pit, to the corporation in exchange for the plaintiff's agreement to go into business with the deceased's son and to help in preparing the gravel pit for operation in that business, and that after the plaintiff had performed services as bargained for the deceased refused to keep his promise to convey the land.

The deceased's part of his bargain with the plaintiff was an oral agreement to deed land which was within the Statute of Frauds and therefore cannot be enforced. As the plaintiff furnished the services for which the deceased had bargained, however, the plaintiff may recover the fair value of the labor he performed and materials he supplied in performance of the unenforceable contract. *Williams* v. *Bemis*, 108 Mass. 91, 92-93 (1871). *Parker* v. *Tainter*, 123 Mass. 185, 187 (1877). *Holbrook* v. *Clapp*, 165 Mass. 563, 564-565 (1896). *Miller* v. *Roberts*, 169 Mass. 134, 145, 146 (1897). *Kelley* v. *Thompson*, 181 Mass. 122, 124 (1902). *Heil* v. *McCann*, 360 Mass. 507, 511 (1971), and cases cited.

The fact that the corporation was the intended beneficiary of the plaintiff's services, rather than the deceased, does not alleviate the obligation of the latter to restore to the plaintiff the fair value of the bargained-for goods and services. Restatement: Contracts § 348, comment a, illus. 2, § 355. Williston, Contracts (3d ed.) § 536, pp. 830-832. *Clement* v. *Rowe*, 33 S. D. 499, 506-508 (1914). See also *Albre Marble & Tile Co. Inc.* v. *John Bowen Co. Inc.* 338 Mass. 394, 399-401 (1959). Contrast *Dowling* v. *McKenney*, 124 Mass. 478, 481 (1878). *Douillette* v. *Parmenter*, 335 Mass. 305 (1957), relied on by the defendant, is not in point. There the

plaintiff, in reliance on a promise by the defendant, per-
formed acts which benefitted the defendant but which
the defendant had not bargained for.    See *Cook* v.
*Doggett*, 2 Allen 439, 441 (1861).    In the present case
the plaintiff's services were the performance the deceased
had bargained for in return for his promise to convey the
land.

The plaintiff's unfulfilled expectation that he would be
paid by the corporation does not preclude recovery,
particularly in view of the facts that the corporation, as
the third party beneficiary of the agreement, was the
principal victim of the breach by the deceased, and that,
as a result of that breach, the deceased, rather than the
corporation, became the beneficiary of a substantial part
of the plaintiff's services.[3]    *Friend* v. *Pettingill*, 116
Mass. 515 (1875), cited by the defendant, is not in point,
for two reasons:    first, the defendants there did not
refuse to carry out their unenforceable promise to convey
land; under the terms of their contract they were never
called upon to convey.    Secondly, the provision of the
agreement that the plaintiff was to be paid from profits
was held there to be separate and distinct from the
provisions relating to the conveyance of the land, and
could be separately enforced.    We regard the contract in
the present case as entire.

The defendant's contention that there was no evidence
from which the jury might determine the value of the
benefit conferred on the deceased by the plaintiff's
improvements to the real estate must fail.    This case is
not like *Douillette* v. *Parmenter, supra,* where the
plaintiff was compelled to rely on an unjust enrichment
theory and was entitled to recover only to the extent of
the benefit to the defendant.    The measure of the
damages recoverable by the plaintiff in this case is the

---

[3] We need not consider whether, if the plaintiff had been paid
something by the corporation, the defendant would be entitled to a
deduction.

fair value of the services he performed and the materials he supplied under his agreement with the deceased. *Draper* v. *Turner,* 339 Mass. 616, 619 (1959). *Heil* v. *McCann,* 360 Mass. 507, 511 (1971). Williston, Contracts (3d ed.) § 537, pp. 830-831. Corbin, Contracts, § 327, p. 170. There was sufficient evidence to support the jury's finding of damages. That finding is not vitiated by the fact that the jury apparently discounted much of the plaintiff's claim for damages and evidence in support thereof. *Assessors of Quincy* v. *Boston Consol. Gas Co.* 309 Mass. 60, 72 (1941). *Carlo Bianchi & Co. Inc.* v. *Builders' Equip. & Supplies Co.* 347 Mass. 636, 646 (1964).

*Exceptions overruled.*