STANLEY SLAWSBY *vs.* ETHEL V. SLAWSBY, coexecutrix, & another.[1]

No. 91-P-993.

Middlesex. September 10, 1992. - October 26, 1992.

Present: WARNER, C.J., BROWN, & GILLERMAN, JJ.

*Contract*, To make will, Implied. *Damages*, Quantum meruit. *Evidence*, Value. *Value*.

At the trial of an action by a son, seeking to recover in quantum meruit from the executors of his father's estate the value of personal services he had rendered in reliance on his father's unenforceable oral promise that, if he remained in the employ of the father's supermarket business until the father's death, he would inherit a one-eighth share in a real estate company the father also owned, the judge properly admitted evidence of the value of the real estate company, where the services for which the son sought compensation included, in part, services of a filial nature, which could not be purchased or valued in the marketplace. [466-469]

CIVIL ACTION commenced in the Superior Court Department on August 30, 1984.

The case was tried before *Patti B. Saris*, J., and a motion for a new trial was heard by her.

*Lee H. Kozol* (*Penny Kozol* with him) for Ethel V. Slawsby & another.

*Jack J. Mikels* for Stanley Slawsby.

GILLERMAN, J. When Stanley Slawsby was a young man, and on several occasions thereafter, his father, Benjamin Slawsby, promised him that he would inherit a one-eighth share of Double S Realty Company, Inc. (Double S), a real estate company owned by Benjamin, but only if Stanley

---

[1] Richard Towers, coexecutor with Ethel V. Slawsby of the estate of Benjamin Slawsby.

worked and stayed with Benjamin's supermarket business (Capitol Supermarkets) until Benjamin died.[2]

After completing college, Stanley worked for twenty-five years with Capitol Supermarkets until the business was liquidated in bankruptcy proceedings in 1982. Benjamin died shortly thereafter, leaving a codicil to his will, executed in 1981, which disinherited Stanley and left all the stock of Double S to his wife. Stanley brought suit, seeking to recover in quantum meruit for the value of his services in reliance on the unenforceable oral promises. See G. L. c. 259, §§ 5 & 5A. During the five-day trial, Stanley presented evidence to the jury, repeatedly objected to by the defendants,[3] that the value of a one-eighth share of Double S at the time of Benjamin's death was $463,965.50. The jury returned a verdict in the amount of $443,985.67, excluding interest. The defendants subsequently filed a motion for a new trial, which was denied. We affirm the judgment and the denial of the motion for a new trial.

On appeal, the defendants' principal claim is that it was error for the trial judge to allow the plaintiffs to introduce in evidence the value of Double S. They argue that, by this error, the judge allowed the jury to enforce Benjamin's unenforceable promise, thereby circumventing the Statute of Frauds, G. L. c. 259, §§ 5 & 5A. Lending force to the argument is the jury's award to Stanley of an amount close to the value of a one-eighth share of Double S.

It is settled law in Massachusetts that "[o]ne who has rendered valuable services pursuant to an oral agreement, which cannot be enforced on account of the statute of frauds, may recover the fair value of the services. This remedy is allowed, not as a means of indirectly avoiding the statute, but to prevent the statute from being employed as an instrument of fraud. The remedy compels the defendant to pay for what he has received by virtue of the express contract." *Heil* v. *McCann*, 360 Mass. 507, 511 (1971). See also *Downey* v. *Union*

---

[2]Double S owned and leased to Capitol Supermarkets the real estate on which Capitol Supermarkets conducted its business.

[3]The defendants also moved for a directed verdict, which was denied.

*Trust Co. of Springfield*, 312 Mass. 405, 411 (1942) (recovery in quantum meruit for an unenforceable promise may be allowed "in order to prevent the statute [of frauds] from being employed as an instrument of fraud"); *Green v. Richmond*, 369 Mass. 47, 49-50 (1975) (oral agreement to make a will is not binding, but "if the oral agreement were legal and not contrary to public policy, the plaintiff could recover the fair value of her services").

The reasonable value of the services to the promisor, that is to say, the value of the benefit conferred upon the promisor, is the appropriate restitutional measure of damages. *Hastoupis v. Gargas*, 9 Mass. App. Ct. 27, 35 (1980). 3 Williston, Contracts § 536, at 835 (Jaeger 3d ed. 1960). Further, "[w]hen the unperformed promise is to leave a percentage of the estate, reliable evidence of the estate's value becomes some proof of 'the reasonable value of the performance that [the decedent] has received.'" *Hastoupis v. Gargas, supra* at 35-36, quoting from 5 Corbin, Contracts § 1113, at 601 (1964). Massachusetts cases have admitted the value of the promise, in this case, the value of the one-eighth share of Double S, "on the basis that the value of the estate is the 'price' put on the services by one of the contracting parties." *Green v. Richmond, supra* at 56. See also *Downey v. Union Trust Co., supra* at 413-414 (value of promised annuity admissible as an admission of what testator considered services worth); *Hastoupis v. Gargas, supra* at 37 (evidence of the estate's value admissible as an admission against interest of the value of the services).

Without disputing these propositions, the defendants argue that the value of the contract is admissible only with respect to services which are "unique"[4] and not capable of valuation by ordinary pecuniary standards.[5] In this case, say the de-

---

[4]This characterization by the defendants is appropriately derived from *Hastoupis v. Gargas, supra* at 36.

[5]Williston appears to take the same position. See Williston, *supra* § 536, at 835. Corbin takes a more lenient position. See Corbin, *supra* § 1113, at 601 ("No one doubts, however, that the contract price or rate agreed upon by the parties is admissible in evidence to show what is the

fendants, the services were not unique because the agreement was "in its entirety, a business deal."

Assuming (but not deciding) that the value of the contract is admissible only with respect to services which are unique, we do not agree that in this case there was no evidence of unique services. The nub of the distinction between services that can be valued by ordinary pecuniary methods and those that cannot is whether the services can be purchased in the marketplace at an ascertainable price. In this case, there was evidence that what Benjamin sought, and Stanley provided, was not only the routine, readily obtainable services of an executive in the supermarket business, but also the undeviating filial loyalty of Stanley to Benjamin, something unobtainable in the market place. This contractual purpose is evident in Benjamin's insistence that Stanley would not be permitted to have any outside business interests and could obtain his share of Double S only if he "stayed" with the supermarket business. It was also evident when Benjamin insisted that Stanley's brother, Jeffrey, return his stock in the supermarket when he decided to leave the business. Benjamin's other sons also had to work in the supermarket or forfeit their stock. While conceding that "[d]oubtless, personal considerations motivated Benjamin to make the deal," the defendants add, "but that fact does not alter its essential nature." The defendants would have us attach no importance to Benjamin's motives — his purpose in making the agreement — and instead ask us to consider only the day-to-day services rendered by Stanley. That purpose, however, was the very essence of the matter for Benjamin; he wanted, and received, the certainty of his son's loyalty, both to the business and to Benjamin. True, Benjamin may be seen as having purchased Stanley's loyalty — a suspect but not an unheard-of event in family histories — but that is of no importance. What counts is that Benjamin could not go into the marketplace and

reasonable value of the performance that the defendant has received"). Both commentators would admit evidence of the contract price at least where the services are not capable of valuation by ordinary pecuniary standards.

purchase a son who agrees to commit his loyalty so long as his father lives. Services of a filial nature have been held to be compensable. See *Downey* v. *Union Trust Co.*, 312 Mass. at 410; *Hastoupis* v. *Gargas*, 9 Mass. App. Ct. at 36 n.8 & 37 (compensable services included "five years of consanguineous companionship").

Assuming (as the defendants argue) that the services of Stanley as an executive were not unique, this case involves services some of which were "unique" and some of which could be purchased and valued in the marketplace. These are circumstances which permit the value of the contract price to be admitted in evidence. In both *Green* v. *Richmond*, 369 Mass. at 49, and *Hastoupis* v. *Gargas*, *supra* at 37, the services rendered were a mixture of those that were unique and those that could readily be valued by ordinary pecuniary standards, and in both cases it was decided that the value of the estate was admissible. To be sure, the value of the estate is not to be taken as conclusive evidence, *Hastoupis* v. *Gargas*, *supra* at 38, because the ultimate issue to be determined by the jury is the value of the plaintiff's services based on all the evidence. The judge's instructions made it clear to the jury that they might consider the value of Double S, but not as conclusive evidence, and that it was for the jury to determine the fair value of Stanley's services "based on all the evidence you heard at the trial." In this fashion the judge properly left the entire and possibly difficult matter of valuation to the trier of fact for final resolution. See *ibid.* at 38. Even though the award of the jury was close to the value of Double S, this, too, was of no importance because the issue of the fair value of the services of the plaintiff was carefully given to the jury under proper instructions. See *ibid.* ("The fact that damages are sizeable does not require the award to be rejected out of hand where there is no indication that the estate's value was applied as a *per se* measure").

The defendants also argue that the proper valuation date for Double S was the date of the agreement, not the date of death. That issue was left open in *Green* v. *Richmond*, *supra* at 58 n.3, and in *Hastoupis* v. *Gargas*, *supra* at 38-39. The

issue in this case is raised for the first time on appeal and we decline to exercise our discretion to consider the argument, see *Pryor* v. *Holiday Inns, Inc.*, 401 Mass. 506, 509 (1988), and cases cited, other than to note that we see no good reason why, once faced with the certainty that the value of Double S would be admitted at trial, the defendants did not request that the judge admit evidence of the value which they now claim was fair.

The judge's rulings, as well as her instructions to the jury, were without error, as were the denial of the motion for a directed verdict and the denial of the motion for a new trial. The judgment and the order denying the motion for a new trial are therefore affirmed.

*So ordered.*