**George F. ROUSSEAU, Plaintiff,**

v.

**George DIEMER, Individually and as General Partner of Route 9 Associates, L.P.; Robert Pacilli, General Partner of Route 9 Associates, L.P.; the Route 9 Associates Limited Partnership, Federal Deposit Insurance Corporation, As Receiver for Maine Savings Bank; and William Nickerson, Defendants.**

**Civil Action No. 97–40075–CBS.**

United States District Court,
D. Massachusetts.

Oct. 22, 1998.

George F. Rousseau, Merrimack, NH, pro se.

Barry B. Teicholz, Law Offices of Barry B. Teicholz, Boston, MA, for George F. Rousseau.

Douglas L. Fox, Shumway, Giguere, Byrne & Fox, Worcester, MA, for George Demer and Paul Martella.

Carolyn H. Leary, Phillips, Silver, Talman & Aframe, P.C., Worcester, MA, for William Nickerson.

John David Ferrer F.D.I.C., East Hartford, CT, Charles Neuffer, F.D.I.C., Legal Div., Carolyn H. Leary, Phillips, Silver, Talman & Aframe, P.C., Worcester, MA, for F.D.I.C.

## *MEMORANDUM AND ORDER*

SWARTWOOD, United States Magistrate Judge.

### *Nature of the Case*

George F. Rousseau ("Plaintiff" or "Mr. Rousseau") has filed an Amended Complaint ("Complaint") seeking damages for work performed as a subcontractor on a parcel of land located in Westborough, Massachusetts (the "Property") which was owned by Route 9 Associates Limited Partnership ("Route 9 Associates"), a Pennsylvania Limited Partnership, authorized to do business in the Commonwealth of Massachusetts. Plaintiff seeks to recover from George Diemer ("Mr.Diemer") and Robert C. Pacilli ("Mr.Pacilli"), individually and as General Partners of Route 9 Associates, as owners of the Property; the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for the Maine Savings Bank, which had provided Route 9 Associates with a construction loan for improvements on the Property; and William Nickerson ("Mr.Nickerson"), a former loan officer of the Maine Savings Bank. In Count I, Plaintiff seeks to recover for breach of contract against Messrs. Diemer, Pacilli, Route 9 Associates and the FDIC; in Count II, Plaintiff seeks to recover for breach of fiduciary obligation against Messrs. Diemer and Pacilli, Route 9 Associates, the FDIC and Mr. Nickerson; in Count III, Plaintiff seeks to recover on a theory of quantum meriut against Messrs. Diemer and Pacilli, Route 9 Associates and the FDIC; in Count IV, Plaintiff seeks to recover for intentional interference with a beneficial contractual relationship against Messrs. Diemer and Pacilli, Route 9 Associates, the FDIC and Mr. Nickerson; and in Count V, Plaintiff seeks recovery for violation of Massachusetts General Laws, Chapter 93A against Messrs. Diemer and Pacilli, Route 9 Associates, the FDIC and Mr. Nickerson.

### *Nature of the Proceeding*

This Memorandum and Order addresses the following motions:

1. Defendant, William Nickerson's Motion to Dismiss (Docket No. 25);

2. Defendant, FDIC, As Receiver Of Maine Savings Bank's Motion to Dismiss (Docket No. 27);

3. Motion of Steven M. Notinger, as Chapter 7 Bankruptcy Trustee in the Matter of George F. Rousseau, to Substitute Chapter 7 Trustee As Plaintiff (Docket No. 33); and.

4. George Diemer's Motion to Dismiss (Docket No. 38).

### *Standard of Review*

### *Motion to Dismiss*

A motion to dismiss for failure to state a claim under Rule 12(b)(6) will be granted only if the plaintiff would be unable to recover under any set of facts. *Gonzalez–Bernal v. United States,* 907 F.2d 246, 248 (1st Cir. 1990).

### *Defendants' Motions*

Mr. Diemer, Route 9 Associates, the FDIC, and Mr. Nickerson (collectively, the "Defendants") have filed motions to dismiss. The FDIC and Mr. Nickerson seek to dismiss the claims against them on the following grounds: (1) insufficient service of process, (2) lack of personal jurisdiction (with respect to Mr. Nickerson only), and (3) failure to state a claim. This latter ground for dismissal can be divided into two parts: first, all claims against these Defendants were not commenced within the time provided by the applicable statute of limitations and second, Plaintiff has failed to state a legal cause of action against them. Mr. Diemer and Route 9 Associates have filed a motion to dismiss on the grounds that all of the claims against them are barred by the applicable statute of limitations.

### *Findings of Fact*

The following facts are stated in a light most favorable to the Plaintiff, as the non-moving party.

1. In March 1988, the FDIC's predecessor in interest, the Maine Savings Bank, granted a construction loan to Route 9 Associates in the principal amount of Nine Million Eight Hundred Thousand ($9,800,000) Dol-

lars secured by a first mortgage on the Property.

2. Sometime in 1988, Route 9 Associates entered into a contract with Pace Associates for development and construction of a shopping center on the Property.

3. In August 1988, Plaintiff entered into a standard form AIA subcontract with Pace Associates for One Million Five Hundred Sixty–Seven and Twenty Hundredths ($1,567,000.20) Dollars for site preparation and excavation work on the Property. The subcontract provided for payments by approved requisitions less ten percent (10%) retainage. Subsequent to the signing of the subcontract between Plaintiff and Pace Associates, Mr. Diemer, in his capacity as General Partner of Route 9 Associates, sent Plaintiff a letter advising him that Interstate Construction and Design Co., Inc. had become the new general contractor for the shopping center in place of Pace Associates and that "your contract, subcontract, purchase order, or any other form of contractual agreement in effect at the present time— and in the future—will be honored in accordance with its terms ... ".

4. The Maine Savings Bank: was aware of and approved Plaintiff's subcontract for site preparation and excavation of work on the Property; had in its possession a copy of the subcontract; maintained records reflecting disbursements and retainage made from the loan for payments on requisitions submitted pursuant to the subcontract; and had its inspector review and approve all requisitions submitted by Plaintiff for work performed in accordance with the subcontract.

5. As of October 1989, Plaintiff was due the sum of Sixty–Three Thousand ($63,000) Dollars in retainage held back from loan proceeds against prior requisitions which had been submitted by Plaintiff and approved by the Maine Savings Bank's inspector and an additional Forty–Eight Thousand Six Hundred Ninety–Nine and Seventy–Five Hundredths ($48,699.75) Dollars for work performed for which requisitions had been approved by the Maine Savings Bank, but not paid. Additionally, as of October 1989, Plaintiff had performed "cut and fill" work for $360,000 which was beyond the scope of

the subcontract but had been required by inspectors for the Town of Westborough and approved by Route 9 Associates.

6. In November 1989, Route 9 Associates defaulted on their loan. In accordance with the terms and conditions of the mortgage and construction loan agreement, the Maine Savings Bank took possession of the Property and thereafter, on February 13, 1990, foreclosed against the Property.

7. During October and November 1989, Plaintiff contacted Mr. Nickerson and other employees of the Maine Savings Bank for the purpose of collecting amounts due him under his subcontract.

8. During Plaintiff's first conversation with Mr. Nickerson,· Mr. Nickerson told Plaintiff that he should not be concerned, that the bank was going to honor his final requisition and retainage and that checks would be cut and payment would be made within a week.

9. Approximately seven to ten days after being told by Mr. Nickerson that the Bank would make payment, payment was not made and Plaintiff again contacted employees of the Maine Savings Bank inquiring as to when he could expect payment. Maine Savings Bank's employees were evasive in their responses to Plaintiff's inquiries.

10. On February 1, 1991, the Maine Savings Bank failed and the FDIC was appointed receiver for the failed bank. In October or November 1989, the Maine Savings Bank did issue checks to Route 9 Associates in payment of Plaintiff's final requisitions including retainage, but those checks were endorsed back to the Maine Savings Bank by Route 9 Associates in partial payment of amounts then due from Route 9 Associates to the Maine Savings Bank in connection with the construction loan.

11. On February 28, 1995, Plaintiff filed a voluntary petition in bankruptcy in the District of New Hampshire.

12. On July 10, 1995, a discharge of debtor (Plaintiff) was docketed.

13. On February 28, 1997, Plaintiff, acting pro se, filed his original Complaint in this case.

14. On July 9, 1998, a motion was filed to substitute Mr. Rousseau's Chapter 7 bankruptcy trustee ("Trustee"), as the Plaintiff in this action.

## Discussion

A. *Whether Plaintiff's Claims Are Barred by the Statute Of Limitations; Whether the Trustee Should Be Substituted As The Real Party In Interest.*

The parties have assumed that Massachusetts law applies for purposes of determining whether Plaintiff's claims were filed within the applicable statute of limitations and for purposes of determining whether Plaintiff has stated a cause of action against the FDIC and Mr. Nickerson. For that reason, I will apply Massachusetts law. Under Massachusetts law, the statute of limitations for breach of contract (Count I) is six years; the statute of limitations for breach of fiduciary duty (Count II) is three years[1]; the statute of limitations for quantum meriut (Count III) is six years; the statute of limitations for intentional interference with beneficial contractual relationships (Count IV) is three years; and violation of Mass.Gen.L.ch. 93A (Count V) is four years.

Plaintiff's breach of fiduciary duty claim and his claim for intentional interference with beneficial contract sound in tort. *See* note 1, *supra.* "In general, a tort cause of action accrues either when the plaintiff is injured as a result of the defendant's unlawful act or omission, or, if the wrong is 'inherently unknowable,' when the plaintiff knows or should have know that [s/he] has been injured." *Pagliuca v. City of Boston,* 35 Mass.App.Ct. 820, 824, 626 N.E.2d 625 (1994) (internal citations omitted). As to Plaintiff's Chapter 93A claim, the accrual date for such an action "is determined by the same principles dispositive of the accrual dates of general tort actions." *International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.,* 29 Mass.App.Ct. 215, 221, 560 N.E.2d 122 (1990). Plaintiff has conceded that he was on inquiry notice regarding these claims as of August 1990. *See [Plaintiff's] Opp. to FDIC and William Nickerson's Mot. to Dismiss,* (Docket No. 34), at p. 8,n.6. Therefore, the statute of limitations on Plaintiff's breach of fiduciary and intentional interference claims expired in August 1993 and the statute of limitations on his Chapter 93A claim expired in August 1994.

Plaintiff's claim for breach of contract accrued when the breach occurred, *see Saenger Org. v. Nationwide Ins. Licensing Assoc.,* 119 F.3d 55, 64 (1st. Cir.1997) and his action for quantum meriut accrued when the work for which he seeks compensation was completed, *see Palandjian v. Pahlavi,* 614 F.Supp. 1569, 1573 (D.Mass.1985). Plaintiff completed his work on the property on or prior to October 1989. Furthermore, Plaintiff alleges that the Defendants breached their contractual duties in October or November 1989 when funds were disbursed to Route 9 Associates in payment for Plaintiff's "final requisition and the retainage due" and Route 9 Associates endorsed the checks back to the Maine Savings Bank. *Complaint,* at ¶¶ 25–27. Therefore, as to these causes of action, the statute of limitations did not expire until October/November 1995.

Plaintiff commenced this action on February 28, 1997 which, for all claims, is well beyond the expiration of the statute of limitations. However, Plaintiff argues that he filed this suit within the applicable statute of limitations because he is entitled to the benefit of 11 U.S.C. § 108 which provides for an extension of time for a bankruptcy trustee to commence a civil action on behalf of a bankrupt estate. Section 108 states, in relevant part, as follows:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trust-

---

1. The parties agree that the statute of limitation for Plaintiff's breach of fiduciary duty claim is the three year tort statute of limitations. Therefore, it is not necessary for this Court to determine whether the "gist of [that] action" is contractual, in which case the six year contract statute of limitations would apply. *See Barber v. Fox,* 36 Mass.App.Ct. 525, 529, 632 N.E.2d 1246 (1994).

ee may commence such action only before the later of-

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C. § 108.

Section 108 operates to extend the statute of limitations as to those claims whose statute of limitations had not expired before the date of the filing of the debtor's bankruptcy petition. On February 28, 1995, Plaintiff filed a voluntary petition for bankruptcy from which he was discharged on July 10, 1995. Since the statute of limitations on Plaintiff's breach of fiduciary duty, intentional interference with contractual relations and Chapter 93A claims expired prior to the date on which Plaintiff filed his voluntary petition in bankruptcy, these claims must be dismissed.[2] I must now determine whether the remaining claims, Count I (breach of contract) and Count III (quantum meruit), as to which the statute of limitations had not run prior to the Plaintiff's filing of his bankruptcy petition, should be dismissed and the Trustee's motion to substitute be denied on the grounds that such claims are now barred because the debtor's filing of an action during the two year extension period provided by Section 108 does not toll the statute of limitations.

▪ Plaintiff has acknowledged that any damages which he were to recover from the Defendants in this action inure to the benefit of his creditors, that is, are the property of his bankruptcy estate. "Where a former debtor commences an action and asserts claims that belong to [his/her] bankruptcy estate, the usual remedy is to substitute as the real party in interest the trustee of the bankruptcy estate in the place and stead of the former debtor". *Kohlbrenner v. Victor Belata Belting Co., Inc.*, No. 94–CV–0915E(H), 1998 WL 328639 (W.D.N.Y.1998);

*see also Tate v. Snap–On Tools Corp.*, 1997 WL 106275, *4 n, 5 (N.D.Ill. Feb. 11, 1997) (where debtor has filed action within two year extension period provided by Section 108 and claims are property of bankruptcy estate, appropriate remedy is for trustee to be substituted as real party in interest). The Trustee has filed a motion to substitute pursuant to Fed.R.Civ.P. 17(a), which provides, in relevant part, that "[e]very action shall be prosecuted in the name of the real party in interest". Furthermore, since Rule 17(a) further provides that "such ... substitution shall have the same effect as if the action had been commenced in the name of the real party in interest", the fact that at the time he filed the motion to substitute "the Trustee [was] time barred from filing a new complaint ... is irrelevant." *Snap-on Tools Corp.*, 1997 WL at *5; *Nagle v. Commercial Credit Business Loans, Inc.*, 102 F.R.D. 27, 32 (E.D.Pa.1983) (since original complaint was not time barred, Trustee is accorded opportunity to substitute, even though applicable statute of limitations for action expired before his attempted intervention).

Defendants argue that allowing the Trustee's motion to substitute at this late date would be contrary to Rule 17(a)'s requirement that the real party in interest must be substituted within a reasonable time after the action is filed. *See* Rule 17(a) ("[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ... substitution of the real party in interest)." "What constitutes a 'reasonable time' for purposes of Rule 17 is a matter of judicial discretion that depends on the facts of each case." *Id.*, at *8 (citations omitted).

▪ Neither the Trustee nor the Plaintiff has offered any explanation for waiting over sixteen months prior to filing the motion to substitute. Furthermore, it is unclear whether Plaintiff scheduled the claims which he asserted in his Complaint, thereby putting

---

**2.** Mr. Nickerson seeks to dismiss the claims against him on the grounds that he was improperly served, this Court lacks jurisdiction over his person, Plaintiff has failed to state a claim for which relief may be granted and all of the claims against him are barred by the applicable statute

of limitations. I have found that all of the claims asserted against Mr. Nickerson are time-barred and therefore, as to him the Complaint should be dismissed. For this reason, it is not necessary for me to address Mr. Nickerson's other arguments.

the Trustee on notice in 1995 that such claims were an asset of Plaintiff's bankruptcy estate. Nonetheless, I am mindful of the fact that if I deny the Trustee's motion to substitute, Plaintiff's creditors would be left without a remedy. Thus, the axiom that substitution of the real party in interest to avoid injustice favors allowing the Trustee's motion in this case. At the same time, I must examine whether or not substitution of the Trustee as the real party in interest at this late date would prejudice the Defendants. "As long as defendant is fully apprized of a claim arising from specified conduct and has prepared to defend the action against him, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense." 6(C) Charles A. *Wright, Arthur R. Miller & Edward H. Cooper,* Federal Practice and Procedure, § 1501 at 524. I find that the Defendants in this action would not be prejudiced if the Trustee is substituted as the real party in interest. Defendants have had the opportunity to file responsive pleadings. Additionally, nothing will change as a result of substituting the Trustee as plaintiff in this action, except that this action will now be maintained for the benefit of Plaintiff's creditors and not for the Plaintiff himself. Therefore, I am allowing the Trustee's motion to substitute and all further references to "Plaintiff" shall be deemed to be references to the Trustee.

**B.** *Whether the Plaintiff's Claims Against the FDIC Should Be Dismissed For Insufficient Service of Process*

█ The FDIC argues that the claims against it must be dismissed because it has not been properly served with process in this case. Specifically, the FDIC argues that service was improper because the Plaintiff himself mailed the Complaint and he failed to include a summons.

At the time that he filed this action, Mr. Rousseau was acting pro se. Although Mr. Rousseau did fail to comply with all of the legal requirements for proper service and process, the FDIC received actual notice of the filing of this action. Under the circumstances of this case, I find that the Plaintiff has established good cause for failing to properly serve the FDIC in that: Mr. Rousseau made a good faith attempt to serve the FDIC; the FDIC was on actual notice of the claims against it and therefore, was not prejudiced; and Mr. Rousseau acted under the belief that the FDIC had accepted service. Therefore, the FDIC's motion to dismiss for insufficient service of process is denied.

**C.** *Whether the Plaintiff's Remaining Claims Against the FDIC Should Be Dismissed For Failure to State A Cause of Action*

The FDIC argues that Plaintiff's breach of contract and quantum meruit claims should be dismissed because: i) there was no enforceable contract between Mr. Rousseau and the Maine Savings Bank; ii) Mr. Rousseau was not a party to the construction loan agreement between Route 9 Associates and the Maine Savings Bank and as a matter of law, he was not a third-party beneficiary of that agreement; and iii) he is not entitled to recover against it for actions taken based on alleged oral representations made by Maine Savings Bank employees. Plaintiff argues that as a subcontractor, Mr. Rousseau was an intended beneficiary of the construction loan agreement and that Mr. Nickerson, on behalf of the Maine Savings Bank, made oral representations to pay Mr. Rousseau for his work and he acted on those representations and therefore, the FDIC's motion to dismiss the remaining claims against it should be denied.

**1.** *Whether Mr. Rousseau was a Third Party Beneficiary of the Construction Loan Agreement*

█ Mr. Rousseau was not a party to the construction loan between Route 9 Associates and the Maine Savings Bank. Under Massachusetts law, a third party can maintain an action for breach of contract only if he or she is an intended beneficiary of the contract. *Rae v. Air–Speed, Inc.,* 386 Mass. 187, 195, 435 N.E.2d 628 (1982). The intent of the parties determines whether a third party is an intended beneficiary. *Markel Service Ins. Agency, Inc. v. Tifco, Inc.,* 403 Mass. 401, 405, 530 N.E.2d 340 (1988). "A party is an intended beneficiary 'if recogni-

tion of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties,' and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. A court must look to the language and circumstances of the contract for indicia of such intention". *Dushkin v. Desai*, 18 F.Supp.2d 117, 122 (D.Mass.1998) (internal citation omitted). As the loan agreement is not part of the record, the Plaintiff must rely on the aversions in the Complaint in order to establish that Mr. Rousseau was an intended third party beneficiary of the loan agreement. In the Complaint, it is averred that Maine Savings Bank: was aware of the subcontract between Mr. Rousseau and Route 9 Associates; it maintained in its records, in the usual course of business, documents reflecting the subcontract including, a copy of the subcontract and documents reflecting disbursements made from loan proceeds for payments against requisitions submitted pursuant to the subcontract; and as a condition precedent to the disbursement of loan proceeds, required that the work for which Mr. Rousseau's requisitions were submitted be reviewed and approved by an inspector designated by it. Furthermore, it is alleged that the Maine Savings Banks inspector reviewed and approved the requisitions submitted by Mr. Rousseau. Nonetheless, even assuming that such allegations are true, for the reasons set forth below, I find that as a matter of law, Mr. Rousseau was not an intended beneficiary of the construction loan agreement between Maine Savings Bank and Route 9 Associates.

 In order for Mr. Rousseau to be a third party beneficiary of the construction loan agreement, at the time that they entered into that agreement, the Maine Savings Bank and Route 9 Associates must have contemplated the present or future existence of a duty or liability to Mr. Rousseau and the agreement must have been for the express purpose of satisfying and/or discharging that duty or liability. *Choate, Hall & Stewart v. SCA*, 378 Mass. 535, 540, 392 N.E.2d 1045 (1979). However, Mr. Rousseau was not hired as a subcontractor until several months after the construction loan documents were signed by the parties to that transaction.

Additionally, "loan agreements do not confer third party beneficiary status on persons who simply expect to be paid from loan proceeds". *Industrial Sewing Serv., Inc. v. Commonwealth of Massachusetts*, No.Civ.A.A95–00033, 1996 WL 414011, at *3 (Mass.Super. July 23, 1996) (citing Restatement (Second) of Contracts § 302): *see also Gilmore v. Century Bank and Trust Co.*, 20 Mass.App. Ct. 49, 58, 477 N.E.2d 1069 (affirming finding that in this unusual case, trustee for subcontractor-creditors was intended beneficiary of construction loan agreements between bank and owner, but noting that in usual construction loan setting, subcontractor cannot sue on loan agreement). Therefore, Plaintiff cannot recover from the FDIC on the grounds that Mr. Rousseau was a third party beneficiary of the construction loan agreement. I will now address whether the oral representations made to Mr. Rousseau by Mr. Nickerson created an enforceable contract and whether the Complaint states a quantum meruit claim against the FDIC.

*2. Whether there was an Enforceable Contract Between Maine Savings Bank and Mr. Rousseau; Whether the Complaint States a Claim for Quantum Meruit.*

 Plaintiff asserts that Mr. Nickerson's oral representations to Mr. Rousseau that Mr. Rousseau would be paid for work he had already performed created a binding contract between Mr. Rousseau and the Maine Savings Bank. It is not clear from the pleadings and Plaintiff's submissions, but it appears that Mr. Nickerson's oral representations to Mr. Rousseau are also the basis for Plaintiff's quantum meruit claim.

Assuming that there was consideration for such a promise (under the circumstances of this case, a tenuous assumption), Plaintiff's claim for breach of contract by Maine Savings Bank fails since an oral contract to pay the debt of another is not enforceable under the Massachusetts Statute of Frauds. *See* Mass.Gen.L. ch. 259 § 1 (promisor's agreement to pay the debt of another is not enforceable unless such promise is evidence by a writing signed by the promisor). Mr. Rousseau had a contract with Route 9 Associates pursuant to which he was to perform work on

the Property and be paid for that work. To the extent that Mr. Nickerson, on behalf of Maine Savings Bank, promised that Mr. Rousseau would be paid for the work *he had already performed,* Maine Savings Bank was agreeing to honor Route 9 Associate's obligation to Mr. Rousseau. Since the Plaintiff has failed to allege that the Maine Savings Bank's promise to pay Mr. Rousseau for work that he had performed on the Property is evidenced by a writing, signed by Maine Savings Bank, as a matter of law, Plaintiff's claim against the FDIC for breach of contract must be dismissed.

Likewise, Plaintiff's claim for quantum meruit must also fail. "It is settled in Massachusetts that '[one] who has rendered valuable services pursuant to an oral agreement, which cannot be enforced on account of the statute of frauds, may recover the fair value of the services ... The remedy compels the defendant to pay for what he has received by virtue of the express contract' ". *Slawsby v. Slawsby,* 33 Mass.App.Ct. 465, 466, 601 N.E.2d 478 (1992); *Meng v. Trustees of Boston Univ.,* 44 Mass.App.Ct. 650, 653 n. 4, 693 N.E.2d 183 (1998). However, in this case, Mr. Rousseau had rendered his services *prior* to Maine Savings Bank's alleged promise that he would be paid all the monies due him. Under these circumstances, Mr. Rousseau did not perform work on the Property as the result of Mr. Nickerson's promise and Maine Savings Bank received no benefit. Therefore, the Complaint fails to state the essential elements a quantum meruit claim against the FDIC.

### Conclusion

1. Defendant, William Nickerson's Motion to Dismiss (Docket No. 25) is *allowed;*

2. Defendant, FDIC, As Receiver Of Maine Savings Bank's Motion to Dismiss (Docket No. 27) is *allowed;*

3. Plaintiff's Motion to Substitute Chapter 7 Trustee As Plaintiff (Docket No. 33) is *allowed;* and

4. George Diemer's Motion to Dismiss (Docket No. 38) is *denied.*